**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Betty Ann St. George, *et al.*, | ) | No. CV-04-1210-PCT-LOA |
| | ) | |
| Plaintiffs, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Home Depot U.S.A., Inc., a foreign corporation; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter arises on Defendants' Motion for Summary Judgment on Plaintiffs' Negligent Hiring Claim (Count III) and Request for Attorneys' Fees (docket # 334) and Motion for Summary Judgment on Plaintiffs' Negligent Supervision and Negligent Retention Claims (Counts IV & V) and Request for Attorneys' Fees (docket # 336), filed on April 19 and 21, 2006, respectively. This matter was formally reassigned to the undersigned Magistrate Judge on September 21, 2006 after all parties voluntarily and unambiguously consented to magistrate judge jurisdiction. (docket # 377 and # 379). The district court has jurisdiction under 28 U.S.C. § 1331, based on Plaintiffs' federal Title VII claims; it has pendent jurisdiction over the related state law claims under 28 U.S.C. § 1367(a).

After considering all the pleadings submitted on the subject motions, the parties' Statements of Facts[1] and relevant case law, the Court concludes that no genuine dispute of material fact exists whether Defendants are liable pursuant to the willful misconduct exception to Arizona's exclusive worker's compensation scheme and the negligent hiring, supervising and retaining theories of liability. Therefore, Defendants are entitled to summary judgment as a matter of law on Counts Three, Four and Five of the Third Amended Complaint. Defendants' requests for an award of attorneys' fees, however, will be denied. Oral argument of the subject motions scheduled for November 28, 2006 at 4:00 p.m. will be vacated as unnecessary to assist the Court in resolution of these motions.

## **BACKGROUND**

This lawsuit is brought by twenty-one women (collectively "Plaintiffs") who work or previously worked at the Home Depot store # 452 in Prescott, Arizona from shortly before it opened to the public in December, 1997 to June 14, 2004 when Plaintiffs commenced this lawsuit. Plaintiffs' Third Amended Complaint, filed on March 23, 2005, alleges six claims of liability against Home Depot and eight individual defendants[2] who worked with Plaintiffs in a supervisory or managerial capacity at the Prescott Home Depot. Felix Pareja (Store Manager), Steve Maychek (Assistant Store Manager) and John Johnson (Assistant Store Manager) are the only remaining individual defendants.  The Third Amended Complaint alleges the following theories of liability: 1) sex discrimination in employment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (Count One); 2) retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §

---

[1] Pending receipt of the Court's courtesy, working copies on or before November 8, 2006, the Court has reviewed the original Statements of Facts (docket # 348, # 362, # 363 and # 371) in addition to the working copies of other pleadings the Court has in its possession.

[2] Richard Nelson, Dave Musen, Alan Dempsey, Kenny Anderson and Bob Radcliff were initially named as defendants but were dismissed from this lawsuit by stipulation on July 14, 2005. (docket # 108)  Phyllis Herchenroeder, a plaintiff, was also dismissed by stipulation on January 21, 2005. (docket # 29)

- 2 -

1  2000e *et seq* (Count Two); 3) negligent hiring in violation of Arizona law (Count Three); 4)
2  negligent supervision in violation of Arizona law (Count Four); 5) negligent retention in
3  violation of Arizona law (Count Five); and 6) intentional infliction of emotional distress in
4  violation of Arizona law (Count Six).
5         Defendants allege that this federal court lacks subject matter jurisdiction over
6  the negligent hiring, supervising and retaining claims because Arizona's workers'
7  compensation statute is the exclusive remedy for Plaintiffs' alleged work-related injuries.
8  (docket # 334 at 2; docket # 336 at 2)  Both defense motions[3] cite as controlling[4] authority
9  Arizona statutes  (A.R.S. §§ 23-1022(A) and (B)) and Arizona cases (*Irvin Investors, Inc. v.*
10 *Superior Ct. (Kuehne)*, 800 P .2d 979, 981-82 (Ariz.Ct.App.1990); *Gamez v. Brush Wellman,*
11 *Inc.*, 34 P.3d 375 (Ariz.Ct.App.2001) in support of their arguments that the district court
12 lacks jurisdiction over Plaintiffs' negligence claims. Defendants also cite persuasive district
13 court authority discussing Arizona law (*Mosakowski v. PSS World Med., Inc.*, 329 F.Supp.2d
14 1112, 1131 (D.Ariz.2003)) on the issues. In response to the dispositive motions, Plaintiffs
15 acknowledge Arizona's exclusivity provision generally deprives courts of subject matter
16 jurisdiction in a tort action by an employee against his or her employer but cite the wilful
17 misconduct exception contained in A.R.S. § 23-1022(A) and "two seminal cases," docket #
18 343 at 4; docket # 347 at 4, (*Ford v. Revlon, Inc.*, 153 Ariz. 38, 44, 734 P.2d 580, 586 (1987)
19 and the Northern District of California case *Greenfield v. America West Airlines*, 2004 WL
20 2600135 (N.D Cal. Nov. 16, 2006) as authority that the pending motions should be denied.

---

[3] Both pending motions are nearly identical except, of course, for setting forth the different elements that a plaintiff must prove to establish a *prima facie* case of each negligence claim.

[4] It is undisputed herein that when a federal court exercises jurisdiction over pendent state law claims, it is bound to follow interpretations of state law by the state's highest court. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 904 (9th Cir.1983); *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 236, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

1         To demonstrate, as they must, that a question of fact exists for jury resolution,
2 Plaintiffs initially refer the Court to their well-pleaded paragraphs in the Third Amended
3 Complaint alleging claims of negligent hiring (docket # 47, ¶¶ 58, 60-61); negligent
4 supervision (*Id.*, ¶¶ 63-68) and negligent retention (*Id.*, ¶¶ 71-75). (docket # 343 at 7; # 347)
5 Plaintiffs then direct the Court to their Statements of Facts ("PSOF") that during all relevant
6 times, Plaintiffs complained to store management about numerous incidents of verbal and
7 physical sexual harassment and retaliation by male managers and male associates, (PSOF ¶¶
8 22-28); that Plaintiffs were exposed to widespread and daily occurrences of various forms
9 of sexual harassment which constituted a pattern and practice of harassment creating a hostile
10 work environment, (PSOF ¶ 26); and that Plaintiffs reported these incidences to various
11 managers in Home Depot # 452, including store managers, assistant store managers,
12 department supervisors, and human resource managers, but corrective measures were not
13 taken to remedy the harassment, (PSOF ¶¶ 22-30). Plaintiffs further allege that Defendant
14 Home Depot negligently hired the three individual defendants (Felix Pareja, Steve Machek,
15 and John Johnson) who were in the highest levels of management in Home Depot # 452 and
16 had the ultimate responsibility to prevent sexual harassment, but who participated in sexual
17 harassment themselves and ratified the sexual harassment of Plaintiffs by other male
18 managers and male associates, (PSOF ¶¶ 22-25, 28). Plaintiffs' Response also proffers legal
19 conclusions that Plaintiffs' injuries were "not unexpected" under A.R.S 1043.01(B); did not
20 result from an "accident" but were caused by "intentional" acts, "largely due to the length of
21 time over which the injuries were sustained and management's failure to remedy ongoing acts
22 of harassment that [management] knew were occurring. ([P]SOF ¶¶ 22-29[.]" (docket # 343
23 at 8)

24         Plaintiffs' Response (docket # 347 at 10-15) provides specific factual details
25 in this record beginning with a 1998 California class action consent decree that required
26 training of Home Depot human resources personnel, (PSOF ¶¶ 31, 32). Some of the facts
27 Plaintiffs proffer for purposes of defeating the pending motions are: (1) that from December
28 1997 until January 2002, while the provisions of the consent decree were in force, Plaintiffs

- 4 -

1   complained of sexual harassment, both verbally and in writing, primarily to male supervisors,
2   including Store Managers Dave Musen and his successor, Defendant Felix Pareja, and
3   assistant store managers to no avail, (PSOF ¶¶ 22-29); (2) that Home Depot #452 had no
4   person serving in an human resource capacity for the first two months of its operation and
5   did not have a human resource manager until January 2002, (PSOF ¶ 34); (3) that on March
6   9, 1998, John Johnson was employed as Assistant Manager Administration and was
7   responsible for all human resources within Home Depot #452, (PSOF ¶¶ 34, 36).  Plaintiffs
8   testified in their depositions that Johnson was willing to listen to their complaints about
9   sexual harassment by male managers and male associates, but he was not willing to
10  reprimand the offenders or implement any corrective action, (PSOF ¶ 28).  Johnson's typical
11  response to female associates who complained about sexual harassment was: "What do you
12  want me to do about it?" (PSOF ¶ 29); (4) Priscilla Ingolia assumed control over all human
13  resource functions for Home Depot # 452 in October 2000, when she was promoted by
14  Defendant Pareja to the position of Assistant Development Supervisor, a position she
15  retained until January 2002, when she was promoted to the position of Human Resource
16  Manager, (PSOF ¶¶ 41, 42).  Plaintiffs testified that Ms. Ingolia was not competent in her
17  position, and they ultimately ceased making complaints to her, (PSOF ¶ 45).  Robert Cox,
18  a regional Home Depot HRM, assessed that Ms. Ingolia did not meet the minimum
19  qualifications for the position, (PSOF ¶ 46).  Ms. Ingolia testified that she was not familiar
20  with EEOC guidelines concerning sexual harassment, although she testified that she had been
21  trained on EEO standards and employment practices seven or eight years earlier, (PSOF ¶
22  48); (5) Defendant Felix Pareja became the Store Manager on January 18, 1999, (PSOF ¶
23  49).  Plaintiff Janet Reavis testified that when she reported to Defendant Pareja that a male
24  associate was sexually harassing her, Defendant Pareja responded "whaa whaa whaa," then
25  proceeded to physically push Plaintiff Reavis out of his office, (PSOF ¶ 53).   Several
26  Plaintiffs testified that from mid-1998 through 2003, they were called, among others, the C-
27  word, "whore" and "bitch" by male managers and male associates, including by Pareja,
28  (PSOF ¶¶ 22, 55).  Plaintiff Betty Ann St. George testified that Defendant Pareja yelled at

- 5 -

1  her "Are all of you on the f---ing rag, you all f---ing bitch and whine at the same time?"
2  (PSOF ¶ 57); and (6) Plaintiff Karen Blystra wrote a written statement that she had been
3  sexually assaulted by a male associate, John Entz , when he repeatedly poked her breast with
4  his finger, (PSOF ¶ 60).  Defendant Pareja testified that Entz was an "old man" and that
5  Plaintiff Blystra could have simply run away from him, (PSOF ¶ 62.).

6  Both Plaintiffs' Responses also cite A.R.S. § 23-1043.01(B) which precludes
7  workers' compensation benefits for an employee's mental injuries, illnesses, and conditions
8  incurred on-the-job unless caused by "some unexpected, unusual or extraordinary stress
9  related to the employment or some physical injury related to the employment was a
10 substantial contributing cause of the mental injury, illness or condition." A.R.S. § 23-
11 1043.01(B). [5]  The Court is unsure why Plaintiffs cite this statute except, perhaps, to show
12 that Arizona's workers' compensation system is not fair under some circumstances to an
13 employee, who has not opted out of the system, because not all on-the-job injuries are
14 compensable but, nevertheless, the employee has given up the right to sue with very few
15 exceptions.

16 Defendants' Replies (docket # 349 and # 351) do not attempt to contest the
17 specific aggravating facts raised in Plaintiffs' Responses, but rather, focus on the legal issues
18 before the Court.

## SUMMARY JUDGMENT

---

[5] A.R.S. § 23-1043.01(B) provides:
   A mental injury, illness or condition shall not be considered a personal injury by
accident arising out of and in the course of employment and is not compensable
pursuant to this chapter unless some unexpected, unusual or extraordinary stress
related to the employment or some physical injury related to the employment
was a substantial contributing cause of the mental injury, illness or condition.

- 6 -

1    A Court must grant summary judgment if the pleadings and supporting 2 documents, viewed in the light most favorable to the nonmoving party, "show that there is 3 no genuine issue as to any material fact and that the moving party is entitled to judgment as 4 a matter of law." Rule 56(c), FRCvP ; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 5 S.Ct. 2548, 2552 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 6 1994). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 7 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986); *Jesinger*, 24 F.3d. at 1130. In addition, 8 "[o]nly disputes over facts that might affect the outcome of the suit under the governing law 9 will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 10 S.Ct. at 2510. The dispute must be genuine, that is, "the evidence is such that a reasonable 11 jury could return a verdict for the nonmoving party." *Id.*

12    A principal purpose of summary judgment is "to isolate and dispose of 13 factually unsupported claims." *Celotex*, 477 U.S. at 323-24, 106 S. Ct. at 2553. Summary 14 judgment is appropriate against a party who "fails to make a showing sufficient to establish 15 the existence of an element essential to that party's case, and on which that party will bear 16 the burden of proof at trial." *Id*. at 322, 106 S.Ct. at 2553; *Citadel Holding Corp. v. Roven*, 17 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the 18 opponent has the burden of proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

19    The party opposing summary judgment "may not rest upon the mere allegations 20 or denials of [the party's] pleadings, but. . . must set forth specific facts showing that there 21 is a genuine issue for trial." Rule 56(e), FRCvP; *Matsushita Elec. Indus. Co., Ltd. v. Zenith* 22 *Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986); *Brinson v. Lind Rose Joint* 23 *Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). There is no issue for trial unless there is 24 sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is 25 not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249- 26 50, 106 S.Ct. at 2511. However, "[t]he evidence of the non-movant is to be believed, and 27 all justifiable inferences are to be drawn in his [or her] favor." *Id*. at 255, 106 S.Ct. at 2513 28 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598,1608-1609 (1970)).

1 In evaluating the evidence submitted by both parties, all evidence and inferences to be drawn
2 therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec.*
3 *Services v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630-31 (9th Cir.1987).

4       In *Anderson*, the Supreme Court explained that the summary judgment standard
5 mirrors the standard for a directed verdict. *Anderson*, 477 U.S. at 250-52. The inquiry under
6 each is the same: whether the evidence presents a sufficient disagreement to require
7 submission to a jury or whether it is so one-sided that one party must prevail as a matter of
8 law. Put another way, summary judgment should be granted where the nonmoving party fails
9 to offer evidence from which a reasonable jury could return a verdict in its favor. *Id.* at 252.
10 The mere existence of a scintilla of evidence in support of the non-moving party's position
11 is not sufficient. *Id.*

12       Whatever facts which may establish a genuine issue of fact must <u>both</u> be in the
13 district court's file and set forth in the opposing pleadings and statement of facts. *Carmen v.*
14 *San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001). The trial court:

> may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers. Though the court has discretion in appropriate circumstances to consider other materials, it need not do so. The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.

19 *Id.* at 1031.

20 Additionally, on a motion for summary judgment, the trial court is not permitted to weigh the
21 evidence, pass upon credibility, or speculate as to the ultimate findings of fact. *Pepper &*
22 *Tanner, Inc. v. Shamrock Broadcasting, Inc.*, 563 F.2d 391, 393 (9th Cir. 1977).

## **DISCUSSION**

### **A. Arizona's Workers' Compensation Scheme**

27       Arizona law provides that "[t]he right to recover compensation pursuant to this
28 chapter for injuries sustained by an employee . . . is the *exclusive remedy* against the

- 8 -

1  employer or any co-employee acting in the scope of his employment [.]" A.R.S. §
2  23-1022(A) (emphasis added); *Irvin Investors, Inc.*, 800 P .2d at 981-82 (holding that the
3  plaintiff's negligence claims against her former employer were barred by Arizona's workers'
4  compensation law, "which provides the exclusive remedy for workers injured on the job")
5  (citing A.R.S. §§ 23-906, 23-1022); *Gamez*, 34 P.3d at 378 ("It is well settled that work-
6  related injury claims are generally addressed exclusively under Arizona's workers'
7  compensation scheme.") (citing A.R. S. § 23-1022(A)). A.R.S. § § 23-1022(A), 23-906(A)
8  ("Employers who comply with the provisions of § 23-961 or 23-962 as to securing
9  compensation . . . shall not be liable for damages at common law or by statute, except as
10 provided in this section, for injury or death of an employee wherever occurring[.]"); *Ringling*
11 *Bros. & Barnum & Bailey Combined Shows, Inc. v. Superior Ct. (Farias)*, 680 P.2d 174,
12 181-82 (Ariz.Ct.App.1983) (holding that the trial court lacked subject matter jurisdiction
13 over the plaintiffs' negligent infliction of emotional distress claim based on the exclusive
14 nature of Arizona's workers' compensation statutes); *Mosakowski*, 329 F.Supp.2d at 1131
15 ("Because, pursuant to the holding in *Irvin Investors*, Arizona law precludes an employee
16 from bringing a tort action based on negligent hiring and negligent retention against their
17 employer, Defendant is entitled to judgment as a matter of law in its favor on Plaintiff's claim
18 of negligence.").

### 1. Intentional Infliction of Emotional Distress v. Negligence Claims

20         Plaintiffs rely heavily upon *Ford v. Revlon, Inc.*, *supra*., to sustain their
21 negligence claims as jury questions in this case. In the Court's view despite similar factual
22 claims in both cases, Plaintiffs' reliance on *Ford* is misplaced because, simply stated, *Ford*
23 dealt with an intentional theory of liability and Plaintiffs herein allege negligence theories.
24         In *Ford*, the Arizona Supreme Court held that the plaintiff's tort claim for
25 intentional infliction of emotional distress against her employer was not barred by Arizona's
26 workers' compensation laws. As Plaintiffs' correctly point out, Ford's claim arose from her
27 employer's failure to respond to Ford's complaints, made over a period in excess of eight
28 months, that her supervisor had committed repeated and flagrant acts of sexual harassment.

734 P.2d at 586. A majority[6] of the Arizona Supreme Court reasoned that plaintiff's "emotional distress and her development of physical complications caused by her stressful work environment," *Id.*, did not result from an "accident" within the meaning of A.R.S. § 1021(B),[7] but were caused by intentional. acts, largely due to the length of time over which the injuries were sustained.[8]  The court also noted that, in light of Ford's numerous complaints, her mental injury was not unexpected under A.R.S. § 23-1043.01(B). *Id.*

---

[6] Two members of the Arizona Supreme Court concurred in the result, but disagreed with the majority's analysis on the issue of whether the Arizona workers' compensation law bars Ford from tort recovery. Vice Chief Justice Feldman's concurring opinion observed that the injury clearly resulted from an "accident" and that the employer's inaction, though intentional, did not rise to the level of "wilful misconduct" within the meaning of the statute. *Id.* at 589. The concurring opinion concluded that the Ford's claim for intentional infliction of emotional distress was not barred because the essence of the alleged wrong was sexual harassment, which is not an inherent or necessary risk of employment but involves a violation of rights protected by law and privacy. *Id.* at 591.

Since this minority view can not be deemed to the law of Arizona, this Court sees no point in analyzing non-controlling law.

[7] A.R.S. § 23-1021(B) provides, in relevant part:
> Every employee who is covered by insurance in the state compensation fund and who is injured by **accident** arising out of and in the course of employment . . . shall be paid such compensation. . . . (emphasis added).

[8] Evidence established that this tort was committed through defendant's action and inaction to plaintiff's complaints made over a period in excess of eight months. Such action and inaction and the resulting emotional injury to the plaintiff were therefore not "unexpected," accidental, or physical in nature so as to limit plaintiff's recovery to the workmen's compensation claim . . . The acts by [the offender] and [the employer] were not "accidents." Indeed, the jury found both parties liable for the intentional offenses in which they engaged . . . An injured employee may enforce common-law liability against his or her employer if not encompassed by statute.

*Ford*, 734 P.2d at 586.

With the benefit of both the analysis by the Arizona Court of Appeals in *Irvin Investors, Inc.*, *supra.*, with somewhat similar facts[9] and identical negligence allegations, and the district court in *Mosakowski*, *supra.*, it is clear *Ford* is not helpful to Plaintiffs.

> . . . *Irvin Investors* is more closely related to the instant matter than the *Ford* case, because in *Irvin Investors*, the court addressed plaintiff's claim of negligent retention and hiring, the same claim plead by plaintiff, while the *Ford* case addressed a claim for intentional infliction of emotional distress, which requires that the plaintiff show that the defendant's acts were intentional, i.e., that the defendant's acts per se fit the exception to the exclusive remedy provision of Arizona's workers' compensation statute. The cases may be reconciled to stand for the proposition that a negligence claim is precluded by the workers' compensation statute while a claim for intentional infliction of emotional distress is not precluded.

329 F. Supp. 2d 1112.

Like *Irvin Investors* and *Mosakowski*, because Plaintiffs' claims of negligent hiring, supervising and retaining allege that they were injured as a result of negligent workplace conduct, such claims are barred by Arizona's workers' compensation scheme.

Finally, this Court gives no weight to the California case, *Greenfield*, relied upon by Plaintiffs. *Greenfield* examines and analyzes California law as it relates to a California cause of action for negligent supervision. It provides the Court no help interpreting Arizona law from the highest Arizona court. *Supra.*, at n. 3.

**2. Wilful Misconduct Exception**

---

[9] *Irvin Investors* involved a female employee at a fast-food restaurant who was sexually assaulted, on two occasions, by a male co-worker who had previously molested another employee at the restaurant. Her action against the employer was for the psychological injuries she suffered and was based on a claim of negligent hiring, supervising and retaining the employee who caused her injury. 800 P.2d at 980.

Vice Chief Justice Feldman was the only Arizona Supreme Court member to vote for review of *Irvin Investors*. *Id*. at 979. One may properly infer that the Supreme Court's denial of review of a *Irvin Investors* attests its approval of the result reached by the Court of Appeals. *Hagen v. U.S. Fidelity and Guar. Ins. Co.*, 138 Ariz. 491, 675 P.2d 1310 (Ariz. 1984) ("[W]hile denial of review usually attests our approval of the result reached by the court of appeals, it does not necessarily indicate our approval of the legal analysis contained in the opinion.").

- 11 -

1    Plaintiffs mention the wilful misconduct exception in A.R.S. § 23-1022(A) to
2 Arizona's exclusive remedy for employee suits against employers without any discussion of
3 its nexus to Defendants' dispositive motion. (docket # 343 at 4; docket # 347 at 4) This Court
4 infers from the lack of attention which Plaintiffs give this exception that they concede that
5 such exception does not apply in this case *vis a vis* the negligence claims. If the Court's
6 assumption is incorrect and Plaintiffs do intend to claim that the wilful misconduct exception
7 creates a question of fact on their negligence claims, then Arizona law clearly bars the
8 applicability of the wilful misconduct exception in this case.

9    Defendants do not dispute that Arizona's exclusive remedy provisions of its
10 workers' compensation statutes do not apply when the employee's injury is caused by the
11 employer's "willful misconduct," which is defined as "an act done knowingly and purposely
12 with the direct object of injuring another." A.R.S. §§ 23-1022(A) & 23-1022(B). But as the
13 Arizona cases have consistently held for decades and as *Mosakowski* demonstrates "[t]he
14 Arizona courts are reluctant to find that employers have acted with wilful misconduct [.]"
15 *Mosakowski*, 329 F. Supp.2d at 1130. *Cf. Diaz v. Magma Copper Co.*, 190 Ariz. 544, 551,
16 950 P.2d 1165, 1172 (Ariz. App.1997) (holding that the defendant employer's acts did not
17 constitute willful misconduct, even though the defendant employer ignored safety hazards
18 and delayed the access of paramedics to the employee until the employee was extricated from
19 a mine, because there was no evidence that the employer's objective was to injure the
20 deceased); *Allen v. Southwest Salt Co.*, 149 Ariz. 368, 718 P.2d 1021 (Ariz. App.1986)[10]
21 (where gross negligence in maintaining hazardous workplace and in failing to make safety
22 modifications on harvester manufactured by employer did not show a deliberate intent to
23 inflict injury on employee who was severely injured by harvester); *Serna v. Statewide*
24 *Contractors, Inc.*, 6 Ariz. App. 12, 429 P.2d 504 (Ariz. App.1967) (employer's conduct did
25 not amount to willful misconduct sufficient to take the action out of the Workers'

---

[10] Having represented Allen throughout this case, the undersigned Magistrate Judge
is painfully aware of how narrowly Arizona courts construe the wilful misconduct exception.

- 12 -

1  Compensation Act when employer disregarded repeated warnings by state safety inspectors
2  regarding twenty-five foot deep trench, knew that previous cave-in had occurred, had
3  instructed decedents that in the event of a cave-in they were to try to crawl inside a sewer
4  pipe in the ditch and wait until they were dug out, and at the time of the fatal occurrence, the
5  decedents tried but failed to reach the pipe).

In *Gamez*, one of the more recent Arizona cases discussing the willful misconduct, reiterates:

> It would appear that our statute [wilful misconduct statute; A.R.S. 23-1022] as well as the principles governing the interpretation of the workmen's compensation statutes which provide for suit at common law for the employer's willful misconduct require that there be deliberate intention as distinguished from some kind of intention presumed from gross negligence. (citation omitted) The Arizona statute is most restrictive in this regard.

34 P.3d at 379

While one might convincingly argue that Arizona's worker's compensation scheme is unfair to the employee under some circumstances, it is for the Arizona legislature or the people of Arizona to change it, not a court engaging in judicial legislation. There being no question of fact, either directly supporting or reasonably inferring from the evidence presented, that Defendants Pareja, Maychek and Johnson or any other Home Depot employees intended ("purposely with the direct object of injuring another") to injure or intended to cause injuries to any Plaintiff by their crude, offensive and wholly unwelcome workplace behavior, Defendants' motions in this regard will be granted.

## B. Request for Attorneys' Fees Pursuant to A.R.S. § 12-349

Defendants seek an award of reasonable attorneys' pursuant to A.R.S. § 12-349 for successfully defending the negligent hiring, negligent supervision and negligent retention claims brought by Plaintiffs. (docket # 334 at 11; docket # 336 at 5)  Defendants argue that A.R.S. § 12-349 and *Phoenix Newspapers, Inc. v. Dept. of Corrections, State of Arizona*, 934 P.2d 801, 807 (Ariz. App. 1997)  mandate fee awards for filing frivolous lawsuits. They argue that since there were numerous Arizona and district court cases adverse to the viability of Plaintiffs' negligence claims and that defense counsel, through a letter to Plaintiffs' counsel with relevant legal research enclosed therein, attempted to have Plaintiffs' voluntarily dismiss

1  such claims, Defendants must be awarded their reasonable attorneys' fees in defeating these
2  claims. Defendants assert "these claims were groundless, harassing and in bad faith,
3  especially after Home Depot's counsel educated Plaintiffs' counsel as to the law in this area
4  and gave him an opportunity to voluntarily dismiss these claims." (*Id.* at 6)

> Arizona Revised Statute § 12-349 provides, in relevant part:
>
> A. Except as otherwise provided by and not inconsistent with another statute, in any civil action commenced or appealed in a court of record in this state, the court **shall** assess **reasonable attorney fees**, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party, including this state and political subdivisions of this state, if the attorney or party does any of the following:
>
> 1. Brings or defends a claim without substantial justification.
> 2. Brings or defends a claim solely or primarily for delay or harassment.
> 3. Unreasonably expands or delays the proceeding.
> 4. Engages in abuse of discovery.
>
> C. Attorney fees shall **not** be assessed if after filing an action a voluntary dismissal is filed for any claim or defense within a reasonable time after the attorney or party filing the dismissal **knew or reasonably should have known that the claim or defense was without substantial justification**.
>
> F. In this section, "**without substantial justification**" means that the claim or defense constitutes **harassment, is groundless and is not made in good faith**.

A.R.S. § 12-349(A), (C) and (F) (emphasis added).

While an award of reasonable attorneys' is mandatory if a claim is pursued without substantial justification, Arizona law is equally clear that the statute requires that the action be groundless, harassing <u>and</u> in bad faith for fees to be awarded. *Phoenix Newspapers, Inc.*, 934 P.2d at 807 (trial court reversed in awarding attorneys' fees pursuant to A.R.S. § 12-349 because the statute uses the conjunctive "and," "all three elements must be present.") (citing *Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 180, 745 P.2d 617, 628 (App.1987), *abrogated by statute on other grounds*).

The Court finds that Defendants have failed to meet their burden of proof (preponderance of the evidence) and that Plaintiffs' and/or Plaintiffs' counsel's failure to voluntarily dismiss Counts Three, Four and Five does not meet the Arizona test of "without

1  substantial justification, " *viz.*, the claims alleged constituted harassment, were groundless
2  <u>and</u> were not made in good faith. *Id*.

3        While Defendants make a case that Plaintiffs' negligence claims were
4  groundless under well-established Arizona law, they provide no argument, much less any
5  evidence, that Plaintiffs asserted these claims with the express or implied intent to harass
6  Defendants coupled with a bad faith motive. The Court submits that the Arizona legislature
7  likely required all three elements to be present before attorneys' fees may be awarded, by
8  analogy to Title VII cases, to prevent the "chilling effect" such awards would have all but
9  "airtight" civil rights or tort claims. *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412,
10 421 (1978); *Barrett v. American Medical Response, N.W. Inc.*, 230 F.Supp.2d, 1160, 1166
11 (D. Oregon 2001). If claimants and defendants were to risk paying an award of reasonable
12 attorneys fees solely because they lost a good faith attempt to expand the common law by
13 asserting novel claims or defenses, the common law would become stagnate and cease to
14 grow in response to needs to serve the ends of justice. *Ontiveros v. Borak*, 136 Ariz. 500,
15 505, 667 P.2d 205 (Ariz. 1983) ("Inherent in the common law is a dynamic principle which
16 allows it to grow and to tailor itself to meet changing needs within the doctrine of *stare*
17 *decisis*, which, if correctly understood, was not static and did not forever prevent the courts
18 from reversing themselves or from applying principles of common law to new situations as
19 the need arose. If this were not so, we must succumb to a rule that a judge should let others
20 'long dead and unaware of the problems of the age in which he lives, do his thinking for him.'
21 " (quoting Justice Douglas, *Stare Decisis*, 49 Colum.L.Rev. 735, 736 (1949)). Defendants
22 request for an award of reasonable attorneys fees will be denied.

23       Accordingly,

24       **IT IS ORDERED** that Defendants' Motion for Summary Judgment on
25 Plaintiffs' Negligent Hiring Claim (Court III) and Request for Attorneys' Fees (docket # 334)
26 and Defendants' Motion for Summary Judgment on Plaintiffs' Negligent Supervision and
27 Negligent Retention Claims (Courts IV & V) and Request for Attorneys' Fees (docket # 336),
28 are **GRANTED** in part as follows: (1) no genuine dispute of material fact exists whether

1  Defendants, or any of them, are liable under the willful misconduct exception to Arizona's
2  exclusive worker's compensation scheme or on Plaintiffs' negligent hiring, supervision and
3  retention claims of liability and, therefore, Defendants are entitled to summary judgment on
4  those claims as a matter of law, and (2) are **DENIED** in part as to Defendants' requests for
5  an award of attorneys' fees.

6  **IT IS FURTHER ORDERED** that oral argument currently set for on
7  **Tuesday, November 28, 2006 at 4:00 p.m.** is hereby **VACATED**. The parties submitted
8  pleadings and memoranda thoroughly discussed the law and evidence in support of their
9  positions. Oral argument would not aid the Court's decisional process. *Mahon v. Credit Bur.*
10 *of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir.1999).

11 **IT IS FURTHER ORDERED** that Defendants' Motion to Strike and Notice
12 of Objection to Portions of Plaintiffs' Statement of Facts (docket # 350) and Motion to Strike
13 and Notice of Objection to Portions of Plaintiffs' Statement of Facts (docket # 352) are
14 **DENIED** as moot.

15 Dated this 1st day of November, 2006.

*[signature]*
Lawrence O. Anderson
United States Magistrate Judge